*321 OPINION of the Court, by
Judge Logan.-
Coger having exQibiteu his bill in chancery against M Gee and others upon an adversary claim to land, pending the suit he passed his bond to M’Gee, for the convey--anee ot his claim with special -warranty, except 500 acres which he reserved, in case the claim should be established in the suit then depending. In consideration whereof, M’Gee covenanted to pay £■ 400 in certain property, and to .prosecute the suit at his own expence,
The complainant’s bill was dismissed, and Coger, in < , , i, i i whose name the suit stood, was compelled to pay the cost, amounting to $ 142 76, and having departed this lile, his executors commenced suit, and recovered judgment at law against M Gee, on his covenant to pay the cost of the suit.
M’Gee thereupon filed his bill of in junction, alleging that the real contract between Coger and himself was, that the £. 400, with interest, was to be refunded, in case Coger’s claim did not succeed. He also charges that he objected to the bond as it stands ; but from the declarations of those present, that a special warranty implied in law a contract to refund the purchase money with interest, in ease the land should be lost, and Co-ger’s consenting that the words should be retained as ex-Bressive of that understanding, the bond was executed as it now stands.
_ TRe defendants do not admit the truth of these alie-Rations. On the contrary, one of them expressly denies ífcat such was the contract, and states that it was a sale without recourse.
The first question presented to our consideration, is,-whéter^»aí;ti/evidence is admissible to prove the meaning of the contract ?
One of the grounds relied on for its admission, is, that special warranties are various in their extent and *322 operation ; and that under the principle of admitting parol evidence to explain a latent ambiguity, it is here admissible.
If an agreement U p;uOH-fen to b.: reduced to wrs'.ing, and the one party prevent it by fraud, equity will relieve*
A writing for fpecial warranty is objected to, whereupon it is ftated that a fpecial warranty binds the warrantor to refund the confi-deratlon with interest ⅜ and upon that uu-detftanding the contract is signed, equity will decree • as upon a contract to refund with in-terese.
Parol evidence may be admitted to ascertain some collateral and extrinsic matter dehorn the writing, where the words themselves prima facie do not import an ambiguity. But such evidence is inadmissible, to contradict the common or technical meaning of words contained in a written contract. A contract in writing must be construed Irmn the face of the instrument itself, and not be left to fluctuate mi the impressions of witnesses, too olten received from misapprehensions, and an imperfect knowledge of some of the material parts of the agreement. The admission of such evidence in these cases, would lead to the introduction of much contrariety of evidence, perjury and great uncertainty in contracts ; which, for the very purpose of guarding against, and concluding the subject from misunderstanding, is the end and advantage of reducing contracts to writing.
All ambiguity of words, from matter within the deed, shall be helped by construction, but never by averment. So parol evidence is inadmissible to restrain the legal operation of general words in an instrument. Therefore it cannot be admitted to prove that a particular estate was not intended to pass under general words sufficient to comprise it — Sugden’s law of Vendors, 11-5, 117.
From this view of the subject, we are led to a further consideration, touching the admissibility of parol evidence in another point oí view in this cause.
it is substantially charged in the bill, that the contract was to refund the £. 400 with interest, in case the land should be lost, and owing to the drawer's understanding that such was the legal effect of a special warranty, he drew the instrument as it now stands. That the complainant objected to the writing, because it was not more explicit in expressing the special agreement of the parties ; but in consequence of the understanding of those present, in regard to the legal effect of a special warranty, and from Coger’s consenting that if thoSe words' were retained, they should he considered as expressive of a contract to refund the £. 400 with interest, in casj§ the land .should not be gained in the suit then depettt ding, the writing was thus executed.
*323 On ibis ground, we are aware of the difficulty to a clear and definite demarkation between those cases in which parol evidence is, and is not admissible, touching written contracts.
Fraud and mistake are proper subjects for relief, in a court of chancery. A writing which has been drawn materially and clearly different from the contract of the parties, and by mistake executed, we cannot doubt the well established powers, of a court ol equity to relieve against.
But if the obligor were fully apprised, in point of fact, of the manner in which the instrument was,expressed, and he executes, or the obligee received it as expressive of the contract, parol evidence varying its legal import, without the imputation of fraud, (if it can in any case,) must be admitted with great caution ; or otherwise, the rule of both law and equity must become visionary, in protecting written bargains from the uncertainty and dangers of parol explanations.
To guard, however, on one hand against fraud and mistake, and to avoid on the other, too easy an ear to the effect of parol evidence in contradicting or varying the terms of a written contract, is the peculiar province of court of chancery. And although such evidence ought' not to be admitted to change the legal import oí a writing, whilst it remains free from the imputation of fraud or mistake ; yet, where fraud or mistake: is alleged, the more dubious the expression is with regard to a precise and definite meaning, and the more dear and unequivo-v cal the proof is, the stronger must be the claim for re- : lief on a court of chancery.
If either party object to a conveyance, on the ground of a term of the agreement being omitted, and the other party promise to rectify it, whereupon, the deed is executed, a specific performance of the agreement will be • enforced — Sugden 132. So il' a party stipulates that an «agreement shall be reduced into writing, and fraudulently prevents it, equity will relieve the party thereby injured — -Sugden 133.
It is laid down by Lord Hardwicke, that equity will ■elieve in respect of plain mistakes in contracts in writing, as well as against frauds in contracts ; and that if reduced into writing contrary to the intention of the parties, on proper proof, it should be rectified j but that *324 tlie proof should be the strongest proof possible. The same doctrine is recognized by Lord Thurlow, that if a mistake appears, it is as much to be rectified as fraud, and that evidence ought not to be refused as incompetent by the chancellor, which went to prove that the words taken down were contrary to the concurrent intention of all the parties. But that such must be strong, irrefragable evidence — -Sugden 121-2.
So where a testator in making his will directs a legacy to be inserted to one, but from his executor, to whom the estate was devised, saying that he would take care to see it paid, and thereupon it was omitted in the will, parol evidence thereof was admitted, and the executor decreed to pay — 1 Eq. Ca. Abr. 230.
For a party either to produce a mistake, or prevent it from being rectified, under the declaration that he would observe the understanding of the parties as verbally expressed and requested to be inserted in the writing, and afterwards attempt an advantage from its omission in the writing, is fraudulent and ought to be relieved against.
Testing the case under consideration, as substantially set forth m the bill, by these principles, we conceive, leads to an examination of the evidence in the cause.
The answer is a positive denial of the material allegations in the bill.
The drawer of the writing between the parties substantially supports those allegations. He deposes that he well recollects there was some objection to the bond because it did not expressly state that the property should be refunded in case the land was lost, and that he observed it made no difference, and mentioned that such, he was informed, was the opinion of Col. Nicholas with respect to special warranties.
Many witnesses, whose credibility stands fair anti Unimpeached, clearly prove the repeated declarations and confessions of Coger, made at different times, that he was to refund the 400 pounds, with interest, in case the land should be lost.
When valuing the property from M’Gee to Coger for the land, Coger urged that it ought to be valued; low, assigning as the reason that if the land should be lost he would have to pay back the amount in mosey With interest, and M’Gee assented thereto,
*325 It is proved that Coger refused to convey the land after M’Gee had paid and demanded a deed for the same, until the dispute depending was settled, upon the ground that if the land were lost he would have to pay back the property with legal interest thereon.
But several parts of this tract of land were clear of the dispute of that suit; so that if the purchase were a chancing one on the part of M’Gee, a conveyance would have been necessary, let the suit have eventuated as it might: and the deed could have expressed the extent of the grantor’s liability in case the claim did not succeed.
The reservation of the 500 acres, if they succeeded, forms no good objection to a conveyance, if it were a sale without recourse ; because the deed of conveyance could have left it out where it would have conformed to the reservation in the bond, and been of no benefit to either party in case the claim failed in the pending Controversy.
The refusal therefore to convey, but especially under the express declaration of the party in assigning the reason of that refusal, is entitled to considerable weight in evincing his understanding to refund, if his claim failed in the controversy, and to retain all the benefit of the claim for parcels of land not embraced thereby.
id say the least of the refusal to convey, it was a breach of the covenant apparent in the bond, for which the obligor was liable to the action of the obligee, in which the measure of damages would have been the amount paid, with interest thereon. Had the deed of conveyance been executed, it would very probably have been so expressed as to hare prevented this controversy about refunding. But truly it would have been to but little purpose to convey, when, if the suit were lost, a reconveyance would have been required. Upon this understanding of both parries, the conveyance seems clearly to have been suspended. If not, why did Co-ger not convey, after the termination of the suit, what land was retained ? And why did M’Gee not then sue for that failure to convey, upon the demand previously made and delayed, until the period which had happened ? -S
Upon a full view of the whole evidence and eircum-anees of the case growing out of the express declaration* *326 and conduct of the parties, we feel an entire conviction that ^ was their expectation, if the suit then depending did not succeed, that the consideration, with interest, should be refunded ; and hut for the mistake of the pensman who drew the instrument of writing, with respect to the legal effect of a special warranty, the contract would hgye been so expressed in the first instance ; and then only for the opinion suggested, and the consent and understanding of Coger that such should be its "effect, the writing would in ail probability have been altered before its execution or acceptance. So that thereby to prevent the alteration, and afterwards attempt to avail himself of an advantage for the want of it, would bring the case within the rule of those decisions and the reason thereof which have been cited.
We concur therefore with the circuit court, that relief ought to be granted in this case.
With respect to the nature and extent of the relief decreed, we also concur. The Weight of the evidence shows that the 400 pounds was to be refunded in money with interest. And the extent of the credit for tab payment of the cost by Coger, is ail he was «untied to.
It was his duty to have paid the 400 pounds with interest, and having paid g 142 76 cost, for that sum he was properly entitled to a credit in part oi the 4u0/ ; but the farther accumulation of cost and damages in the suit by his executors against M’Gce, was not the fault of M’Gee, and he ought not to be. thereby injured.
Decree affirmed.